## IN THE DISTRICT COURT
## OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

GREAT LAKES INSURANCE SE,    )
    )
    )    Case No. 3:20-cv-
    Plaintiff,    )
    )    ACTION IN
    v.    )    ADMIRALTY FOR
    )    DECLARATORY RELIEF
OFFSHORE ADVENTURES LLC,    )
    )
    Defendant.    )
    )

## PLAINTIFF GREAT LAKES INSURANCE SE'S
## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, GREAT LAKES INSURANCE SE, by and through its undersigned counsel, pursuant to 28 U.S.C. §2201, Rules 9(h) and 57 of the Federal Rules of Civil Procedure, and the Local Rules of the District Court for the Virgin Islands, and for its Complaint for Declaratory Judgment would respectfully state as follows:

### PARTIES, JURISDICTION, and VENUE

1.    This is an action for declaratory relief pursuant to Title 28 of the United States Code, sec. 2201 et seq, in that a present controversy exists between the parties hereto in which the Plaintiff asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute.

2.    Venue lies within the District of the Virgin Islands as this cause arises out of a policy of marine insurance delivered by Plaintiff to the Assured named therein, the Defendant, OFFSHORE ADVENTURES LLC, alleged to be located at Watergate Villas West, Bldg. 20 Unit 30, St. Thomas, VI 00802.

3.    This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has subject-matter jurisdiction pursuant to Title 28 of the United States Code, §1333, and Title 48 of the United States Code, § 1612(a).

4.      Plaintiff, GREAT LAKES INSURANCE SE (hereinafter "GLI") is a corporation organized and existing under the laws of the United Kingdom, with its office and principal place of business located in the United Kingdom, in the City of London.

5.      Upon information and belief, the Defendant OFFSHORE ADVENTURES LLC (hereinafter "OFFSHORE") is a limited liability company incorporated in the Territory of the United States Virgin Islands and with its office and principal place of business in the Territory of the United States Virgin Islands.

## FACTUAL ALLEGATIONS

6.      On or about January 22, 2019, OFFSHORE submitted to GLI, via GLI's agent, an application for a policy of marine insurance (hereinafter "the 1998 Ronin application"). Such a submission was a routine aspect of the Plaintiff's procedure for considering whether to agree to provide insurance coverage.

7.      A true and correct copy of the 1998 Ronin application, completed and signed by Robert Brian Richards and submitted to Plaintiff on or about January 22, 2019 by and on behalf of the Defendant by its agent, is attached hereto as **Exhibit 1**.

8.      The 1998 Ronin application requested ninety-five thousand dollars ($95,000.00) in first-party property damage coverage for a 1998 41' Ronin vessel, hull ID RSNRR108797 (hereinafter "the 1998 Ronin").  Ex 1.

9.      The application submitted by OFFSHORE specifically required the applicant to disclose whether OFFSHORE or any named vessel operator had been involved in a loss in the last ten years.  Ex 1.

10.     In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no."  Ex 1.

11.  The application submitted by OFFSHORE specifically required the applicant to disclose whether Robert Brian Richards, identified in the application as a vessel operator, had been involved in a loss in the last ten years. Ex 1.

12.  In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex. 1.

13.  The application submitted by OFFSHORE specifically required the applicant to disclose whether Adam M Majchrzak, identified in the application as a vessel operator, had been involved in a loss in the last ten years. Ex 1.

14.  In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex. 1.

15.  The application submitted by OFFSHORE specifically required the applicant to disclose whether Cody Brian Wabiszevski, identified in the application as a vessel operator, had been involved in a loss in the last ten years. Ex 1.

16.  In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex. 1.

17.  The application submitted by OFFSHORE specifically required the applicant to disclose whether any policy of insurance was declined, cancelled, or non-renewed in the last five years. Ex 1.

18.  In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex 1.

19.  Plaintiff agreed to issue its Policy No. CSRYP/173607, affording ninety-five thousand dollars ($95,000.00) in first-party property damage coverage for the 1998 Ronin against the risks detailed therein, based upon the representations set forth in, and the material information disclosed in, the application. A true and correct copy of Policy No.

CSRYP/173607 (hereinafter "Policy 607"), including the declarations page and the applicable endorsements, is attached hereto as **Exhibit 2**.

20.    On or about January 22, 2019, OFFSHORE submitted to GLI, via GLI's agent, an application for a policy of marine insurance (hereinafter "the 2000 Calypso application"). Such a submission was a routine aspect of the Plaintiff's procedure for considering whether to agree to provide insurance coverage.

21.    A true and correct copy of the 2000 Calypso application, completed and signed by Robert Brian Richards and submitted to Plaintiff on or about January 22, 2019 by and on behalf of the Defendant by its agent, is attached hereto as **Exhibit 3**.

22.    The 2000 Calypso application requested forty-five thousand dollars ($45,000.00) in first-party property damage coverage for a 2000 32' Calypso vessel, hull ID CMS10001J000 (hereinafter "the 2000 Calypso"). Ex 3.

23.    The application submitted by OFFSHORE specifically required the applicant to disclose whether OFFSHORE or any named vessel operator had been involved in a loss in the last ten years. Ex 3.

24.    In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex 3.

25.    The application submitted by OFFSHORE specifically required the applicant to disclose whether Robert Brian Richards, identified in the application as a vessel operator, had been involved in a loss in the last ten years. Ex 3.

26.    In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex. 3.

27.    The application submitted by OFFSHORE specifically required the applicant to disclose whether Adam M Majchrzak, identified in the application as a vessel operator, had been involved in a loss in the last ten years. Ex 3.

28. In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex. 3.

29. The application submitted by OFFSHORE specifically required the applicant to disclose whether Cody Brian Wabiszevski, identified in the application as a vessel operator, had been involved in a loss in the last ten years.  Ex 3.

30. In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex. 3.

31. The application submitted by OFFSHORE specifically required the applicant to disclose whether any policy of insurance was declined, cancelled, or non-renewed in the last five years. Ex 3.

32. In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "no." Ex 3.

33. Plaintiff agreed to issue its Policy No. CSRYP/173608, affording forty-five thousand dollars ($45,000.00) in first-party property damage coverage for the 2000 Calypso against the risks detailed therein, based upon the representations set forth in, and the material information disclosed in, the application.

34. On or about April 17, 2019, during the period of coverage afforded by the Policy 607, the engine of the 1998 Ronin blew a hole in its side, causing oil to shoot out and catch fire.

35. At the time of the incident of April 17, 2019, there were six guests aboard the vessel.

36. Following the report of the loss by OFFSHORE, GLI undertook a full investigation into the causes and circumstances of the loss.

37. Based on the facts uncovered in that investigation, GLI determined that the loss was not caused by a fortuitous event, and therefore not covered by Policy 607.

38. Based on the facts uncovered in that investigation, GLI determined that the damage to the 1998 Ronin's engines, mechanical parts, and electrical parts was not caused by an

accidental external event such as a collision, impact with a fixed or floating object, grounding, stranding, ingestion of a foreign object, lightning strike, or fire, and therefore such damage to the 1998 Ronin's engines, mechanical parts, and electrical parts is not covered by Policy 607.

39. Based on the facts uncovered in that investigation, GLI determined that the 1998 Ronin was unseaworthy at the inception of Policy 607, a breach of Policy 607's express and implied seaworthiness warranties.

40. Based on the facts uncovered in that investigation, GLI determined that the 1998 Ronin was unseaworthy on April 17, 2019 and at the time of the loss, a breach of Policy 607's express seaworthiness warranty.

41. Based on the facts uncovered in that investigation, GLI determined that the loss was caused by wear and tear, gradual deterioration, and/or a latent defect, and therefore expressly excluded from the coverage afforded by Policy 607.

42. Based on the facts uncovered in that investigation, GLI determined that the loss was caused by a latent defect, and therefore expressly excluded from the coverage afforded by Policy 607.

43. On or about January 21, 2020, OFFSHORE submitted to GLI, via GLI's agent, a renewal questionnaire for a policy of marine insurance (hereinafter "the 2000 Calypso renewal questionnaire"). Such a submission was a routine aspect of the Plaintiff's procedure for considering whether to renew insurance coverage. The 2000 Calypso renewal questionnaire is attached hereto as **Exhibit 4**.

44. The renewal questionnaire submitted by OFFSHORE specifically required the applicant to disclose "[a]ll losses in the last 10 years (whether insured or not), including payment amounts and current status". Ex 4.

45. In response to this specific demand for the disclosure of material facts, OFFSHORE answered, "2017 Hurricane Loss - $289,000 paid." Ex 4.

46. Following this disclosure of $289,000.00 in losses from Hurricane Irma in 2017, GLI learned that the 2000 Calypso suffered a total loss in the amount of $45,000.00 from Hurricane Irma in 2017 and was entirely rebuilt.

47. Following the disclosure of $289,000.00 in losses from Hurricane Irma in 2017, GLI learned that a vessel owned by OFFSHORE and identified as "the Intrepid" suffered a total loss in the amount of $253,000.00 from Hurricane Irma.

48. The failure of OFFSHORE to disclose the $289,000.00 in losses from Hurricane Irma in 2017 was a misrepresentation of fact material to the decision of GLI's underwriter to issue Policy 607.

49. If OFFSHORE had truthfully disclosed the $289,000.00 in losses from Hurricane Irma in 2017, GLI's underwriter would have refused to issue Policy 607.

50. OFFSHORE's failure to truthfully disclose the $289,000.00 in losses from Hurricane Irma in 2017 renders Policy 607 void from its inception.

51. Notwithstanding the facts established by GLI's investigation, OFFSHORE has made a claim against GLI under the terms of Policy 607 demanding payment for the damage caused when the 1998 Ronin suffered catastrophic damage to its engine.

52. Notwithstanding the facts established by GLI's investigation, OFFSHORE has made a claim against GLI under the terms of Policy 607, demanding ninety-five thousand dollars ($95,000.00) for the constructive total loss of the 1998 Ronin.

53. Notwithstanding the facts established by GLI's investigation, OFFSHORE has made a claim against GLI under the terms of Policy 607 demanding defense and indemnity against third-party liability claims from passengers allegedly injured by the incident, which occurred on April 17, 2019.

## FIRST CAUASE OF ACTION
### (Misrepresentation of Material Fact, Policy No. 173607)

54.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 53 as if set forth fully herein.

55.    GLI's policy states, in pertinent part:

9. <u>General Conditions & Warranties</u>

******

l) This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstance material to our acceptance or continuance of this insurance.

56.    OFFSHORE breached the provisions of Policy 607 set forth above by misrepresenting or failing to disclose facts, which were material to GLI's decision to accept the risk of insuring the 1998 Ronin.

57.    OFFSHORE misrepresented and/or failed to disclose material facts relating to losses suffered as a result of Hurricane Irma in 2017.

58.    Had OFFSHORE disclosed the $289,000.00 in losses as a result of Hurricane Irma, GLI would not have agreed to insure the 1998 Ronin, would not have agreed to issue Policy 607, would not have agreed to issue Policy 607 with the same terms and conditions, and/or would have charged a higher premium for Policy 607.

59.    OFFSHORE's misrepresentation and/or failure to disclose material facts constitutes a breach of the duties imposed upon OFFSHORE by the express terms of the policy and under the applicable principles of federal admiralty law.

60.    OFFSHORE's breach of Policy 607 renders Policy 607 void *ab initio* and/or entitles GLI to declare Policy 607 void.

61.    Notwithstanding the said breach of Policy 607 and the lack of any coverage under Policy 607, OFFSHORE has made demand upon GLI for payment of an amount equal to the full

costs of repairs and/or to the full amount of the insured value of the 1998 Ronin under Policy 607.

62.     As a result of the aforesaid lack of coverage under the terms of Policy 607 attached hereto, GLI has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy 607.  Until such time as GLI is able to have its rights and responsibilities under the marine insurance policy construed by this Court, GLI will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policy.

63.     As a result of OFFSHORE's demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policy of marine insurance, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

### SECOND CAUSE OF ACTION
### (Lack of Fortuity, Policy No. CSRYP/173607)

64.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 53 as if set forth fully herein.

65.     Policy 607 states, in pertinent part:

### 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application signed by you.  We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

### 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section "A" of the insuring agreement declarations page, we provide coverage for accidental physical loss of, or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and

within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

66.   The incident in which OFFSHORE's vessel sustained damage on April 7, 2019 does not constitute an accidental physical loss for which coverage would be afforded under the express terms and provisions of GLI's policy of marine insurance.

67.   Notwithstanding the lack of any coverage under Policy 607, OFFSHORE has made demand upon GLI for payment of an amount equal to the full insured value of the 1998 Ronin under the said terms of Policy 607.

68.   As a result of the aforesaid lack of coverage under the terms of Policy 607 attached hereto, GLI has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy 607.  Until such time as GLI is able to have its rights and responsibilities under the marine insurance policy construed by this Court, GLI will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policy.

69.   As a result of OFFSHORE's demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policy of marine insurance, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

### THIRD CAUSE OF ACTION
### (Exclusion for Wear and Tear, etc., Policy No. CSRYP/173607)

70.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 53 as if set forth fully herein.

71.   Policy 607 states, in pertinent part:

<u>Exclusions to Coverage A</u>

Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

******

b) Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.
…

e) Manufacturing defects or design defects, including latent defects.

72. The incident in which the Defendant's vessel sustained damage on April 17, 2019 was due to wear and tear, gradual deterioration, lack of maintenance, and/or a latent defect for which coverage is excluded under the express terms and provisions of Policy 607.

73. Notwithstanding the lack of any coverage under Policy 607, OFFSHORE has made demand upon GLI for payment of an amount equal to the full insured value of the vessel insured under the said terms of Policy 607.

74. As a result of the aforesaid lack of coverage under the terms of Policy 607 attached hereto, GLI has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy 607. Until such time as GLI is able to have its rights and responsibilities under the marine insurance policy construed by this Court, GLI will suffer uncertainty with respect to its responsibilities and obligations under the terms of Policy 607.

75. As a result of the OFFSHORE's demands for payment under the terms of Policy 607 attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of Policy 607, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

## FOURTH CAUSE OF ACTION
### (Exclusion for Damage to Engines, Etc., Policy No. CSRYP/173607)

76.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 53 as if set forth fully herein.

77.    Policy 607 states, in pertinent part:

Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

\*\*\*\*\*\*

r) Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as a collision, impact with a fixed or floating object, grounding, stranding, ingestion of a foreign object, lightning strike or fire.

78.    The damage to the 1998 Ronin's engines, mechanical parts, and electrical parts suffered on April 17, 2019 was not caused by an accidental external event such as a collision, impact with a fixed or floating object, grounding, stranding, ingestion of a foreign object, lightning strike or fire.

79.    Notwithstanding the lack of any coverage under Policy 607, OFFSHORE has made demand upon GLI for payment of an amount equal to the full insured value of the vessel insured under the said terms of Policy 607.

80.    As a result of the aforesaid lack of coverage under the terms of Policy 607 attached hereto, GLI has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy 607.  Until such time as GLI is able to have its rights and responsibilities under the marine insurance policy construed by this Court, GLI will suffer uncertainty with respect to its responsibilities and obligations under the terms of Policy 607.

81.    As a result of the OFFSHORE's demands for payment under the terms of Policy 607 attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of Policy 607, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

### FIFTH CAUASE OF ACTION
### (Unseaworthiness, Policy No. 173607)

82.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 53 as if set forth fully herein.

83.    GLI's policy states, in pertinent part:

9. General Conditions & Warranties

******

a) It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement.   Breach of this warranty will void this insurance policy from its inception.

84.    The unseaworthy condition of the 1998 Ronin at the inception of Policy 607 was a breach of the first warranty implied under federal admiralty law and constitutes a total bar to coverage.

85.    The unseaworthy condition of the 1998 Ronin at the inception of Policy 607 was a breach of Policy 607's express seaworthiness warranty and constitutes a total bar to coverage.

86.    The unseaworthy condition of the 1998 Ronin at the time of the loss on April 17, 2019 was a breach of Policy 607's express seaworthiness warranty and constitutes a total bar to coverage.

87.    Notwithstanding the lack of any coverage under Policy 607, OFFSHORE has made demand upon GLI for payment of an amount equal to the full insured value of the vessel insured under the said terms of Policy 607.

88.     As a result of the aforesaid lack of coverage under the terms of Policy 607 attached hereto, GLI has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy 607.  Until such time as GLI is able to have its rights and responsibilities under the marine insurance policy construed by this Court, GLI will suffer uncertainty with respect to its responsibilities and obligations under the terms of Policy 607.

89.     As a result of the OFFSHORE's demands for payment under the terms of Policy 607 attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of Policy 607, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

WHEREFORE, Plaintiff demands judgment from the Court:

(A)     Declaring that GLI's Policy No. CSRYP/173607 is void from its inception due to OFFSHORE's misrepresentation of material facts on the application for insurance and that GLI's Policy No. CSRYP/173607 therefore affords no coverage for any first-party or third-party claims arising out of the incident of April 17, 2019;

(B)     Declaring that neither the incident of April 17, 2019 nor the damage resulting from the incident of April 17, 2019 constitute an accidental physical loss;

(C)     Declaring that coverage for the incident of April 17, 2019 is excluded under the terms of clear and unambiguous exclusions set forth in Policy No. CSRYP/173607;

(D)     Declaring that there is no coverage under Policy No. CSRYP/73607 for the incident of April 17, 2019 due to OFFSHORE's breach of the express and implied seaworthiness warranties;

14

(E)    Declaring that the costs of this action be taxed against the Defendant; and

(F)    Any and all such other and further relief as the Court may deem proper and appropriate in the premises.


                                        **DUDLEY NEWMAN FEUERZEIG LLP**

**DATED**: February 18, 2020               By:  s/ Gregory H. Hodges
                                        Gregory H. Hodges (V.I. Bar No. 174)
                                        Law House
                                        1000 Frederiksberg Gade
                                        P.O. Box 756
                                        St. Thomas, VI  00804
                                        Telephone:  (340) 715-4405
                                        E-Mail: ghodges@dnfvi.com

                                        Attorneys for Great Lakes Insurance SE


R:\DOCS\5473\9\DRFTPLDG\30H5183.DOCX

15

# EXHIBIT 1

**Concept Special Risks Ltd**          www.special-risks.co.uk

**Application Form**                               QUOTE 398168A

| ASSURED'S NAME: Offshore Adventures LLC     US | | ASSURED'S NATIONALITY: US | ASSURED'S STATE OF RESIDENCE: USVI |
|---|---|---|---|

FULL MAILING ADDRESS (including ZIP/Post Code where available). IF COMPANY PROVIDE REGISTERED ADDRESS

7260 Seacliff Villas #19, St Thomas, USVI

BENEFICIAL OWNER (this should be completed if vessel is insured in a company name or if the beneficial owner of the vessel is someone other than the Named Assured): Robert Richards

| EFFECTIVE DATE FROM: (mm/dd/yy) 1/23/19 | TO: (mm/dd/yy) 1/23/20 | 0.01hrs LST |
|---|---|---|

| VESSEL NAME: Mixed Bag II | HULL ID: RSNRR1018797 | LENGTH OVERALL: 41' |
|---|---|---|
| MANUFACTURER/MODEL: Ronin | YEAR BUILT: 1998 | MODEL YEAR: 1998 |
| PURCHASE PRICE: 95,000 | DATE OF PURCHASE: 1/31/2018 | PRESENT VALUE: 95,000 |
| MAXIMUM SPEED: 20 Knots | VESSEL REGISTERED: | VESSEL FLAG: US |

| COVERAGES WILL NOT BE PROVIDED UNLESS REQUESTED HEREUNDER | |
|---|---|
| **COVERAGES** | **LIMIT (US Dollar)** |
| HULL PHYSICAL DAMAGE | 95,000 |
| TENDER/DINGHY | |
| MEDICAL PAYMENTS (maximum ($50,000)) | 10,000 |
| PERSONAL PROPERTY | 2,500 |
| TRAILER | |
| BREACH OF WARRANTY (APPLICABLE LOSS PAYEE MUST BE DETAILED ON PAGE 4) | |
| THIRD PARTY LIABILITY | 1,000,000 |
| LIABILITY TO PAID CREW | 1,000,000 |
| COMMERCIAL PASSENGER LIABILITY | 1,000,000 |
| UNINSURED BOATERS (minimum $100,000) | 100,000 |
| NON-EMERGENCY TOWING | 1,000 |
| OTHER (please specify) | |

PLEASE TICK THE APPROPRIATE BOXES

| PRIMARY POWER | SAIL | | TYPE OF VESSEL | | SAILBOAT | |
|---|---|---|---|---|---|---|
| | OUTBOARD | | | | MOTOR YACHT | |
| | INBOARD | | | Sportfish | SPORTSFISHER | X |
| HULL MATERIAL: | FIBREGLASS | X | | | HOUSEBOAT | |
| | WOOD | | | | CATAMARAN | |
| | KEVLAR | | | | OTHER (give details) | |
| | CARBONFIBRE | | LAST SURVEYED (mm/dd/yy) | | ASHORE OR AFLOAT | |
| | FERROCEMENT | | | | | |
| | METAL | | | | | |

| VESSEL ENGINE/OUTBOARD DETAILS | | | | | |
|---|---|---|---|---|---|
| | HP | MANUFACTURER | FUEL | YEAR | SERIAL NO# |
| #1 | 420 | Caterpillar | Diesel | 2000 | 12J04176 |
| #2 | 420 | Caterpillar | Diesel | 2000 | 12J04176 |

| | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|
| #1 | 1/31/18 | 30,000 | 20,000 |
| #2 | 1/31/18 | 30,000 | 20,000 |

| TENDER/DINGHY INFORMATION | | | |
|---|---|---|---|
| MANUFACTURER | YEAR | HULL ID/SERIAL NUMBER | LENGTH |
| | | | |

| TENDER/DINGHY ENGINE/OUTBOARD DETAILS | | |
|---|---|---|
| MANUFACTURER | HP | SERIAL NUMBER |
| | | |

CSR/APP/1

Page 2 of 5 — **Concept Special Risks Ltd** — www.special-risks.co.uk

| TRAILER INFORMATION | | | | | |
|---|---|---|---|---|---|
| MANUFACTURER | YEAR BUILT | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE | SERIAL NUMBER |
|  |  |  |  |  |  |

**PRIMARY MOORING LOCATION OF VESSEL (INCLUDING ZIP/POST CODE WHERE AVAILABLE) BETWEEN JULY 1ST – NOV 1ST**
PLEASE SPECIFY WHETHER VESSEL WILL BE ASHORE/AFLOAT (MOORED) OR ON A HOIST.  IF YOU ARE UNABLE TO PROVIDE A ZIP/POST CODE, PLEASE ADVISE LONGITUDE & LATITUDE.

*Westin St John Resort          Dock Slip*
*300B Chocolate hole*
*St John, Great Cruz Bay   00830*

**PLEASE ADVISE IF THIS VESSEL IS FITTED WITH MANUFACTURER RECOMMENDED FIRE PREVENTION/EXTINGUISHING EQUIPMENT (if no provide explanation) :**

(YES)          NO          *4 Extinguishers on Board*

**PLEASE DETAIL ANY ANTI-THEFT PRECAUTIONS WHICH ARE IN PLACE**



**ALL WATERS TO BE NAVIGATED DURING THIS POLICY PERIOD (YOU MAY ATTACH AN ITINERARY)**

*Atlantic & Caribbean Sea*

**WILL THE VESSEL BE LAID UP (OUT OF USE) DURING THIS POLICY PERIOD – IF SO DETAIL EXACT DATES, LOCATION AND ADVISE WHETHER ASHORE OR AFLOAT.**

*NO*

| # | GENERAL INFORMATION | | | | |
|---|---|---|---|---|---|
| 1 | IS THIS VESSEL USED FOR FARE PAYING PASSENGERS? | (YES) | NO | **IF YES, NUMBER OF PASSENGERS PER TRIP**<br>MAXIMUM: *6*   AVERAGE: *4*<br>**NUMBER OF TRIPS PER YEAR**<br>MAXIMUM: *200*   AVERAGE: *200* | |
| 2 | IS THIS VESSEL CHARTERED TO OTHERS WITH A CAPTAIN? | (YES) | NO | IF YES, COMPLETE CAPTAIN CHARTER SUPPLEMENTARY SHEET | |
| 3 | DOES THIS APPLICANT EMPLOY PAID CREW | (YES) | NO | IF YES, HOW MANY? *2* | |
| 4 | IS THIS VESSEL CHARTERED TO OTHERS WITHOUT A CAPTAIN (BAREBOAT)? | YES | (NO) | IF YES, COMPLETE BAREBOAT CHARTER SUPPLEMENTARY SHEET | |
| 5 | IS THIS VESSEL USED FOR WATERSKIING OR DIVEBOAT CHARTER? | YES | (NO) | IF YES, PROVIDE DETAILS | |
| 6 | IS THIS VESSEL USED FOR ANY OTHER COMMERCIAL OR BUSINESS PURPOSES? | YES | (NO) | IF YES, PROVIDE DETAILS | |

| # | GENERAL INFORMATION CONTINUED | | | | |
|---|---|---|---|---|---|
| 7 | WILL THIS VESSEL BE OPEATED SINGLE HANDEDLY AT NIGHT? | YES | (NO) | IF YES, ADVISE WHEN, WHERE AND HOW OFTEN? | |
| 8 | DOES ANYONE RESIDE ABOARD THE VESSEL | YES | (NO) | IF YES, FOR HOW LONG DURING THE POLICY PERIOD? | |

**CSR/APP/1**

Offshore_UF000050

| 9 | WILL THIS VESSEL PARTICIPATE IN ANY RACES/REGATTAS/RALLYS/SPEED TRIALS DURING THIS POLICY PERIOD? | YES | NO | IF YES, COMPLETE RACING SUPPLEMENTARY SHEET |
|---|---|---|---|---|
| 10 | WAS ANY INSURANCE DECLINED, CANCELLED OR NON-RENEWED IN THE LAST 5 YEARS? | YES | NO | IF YES, PROVIDE DETAILS |
| 11 | HAVE YOU OR ANY NAMED OPERATOR BEEN INVOLVED IN A LOSS IN THE LAST 10 YEARS (INSURED OR NOT) | YES | NO | IF YES, PROVIDE DETAILS |
| 12 | HAVE YOU OR ANY NAMED OPERATED BEEN CONVICTED OF A CRIMINAL OFFENCE OR PLEADED NO CONTEST TO A CRIMINAL ACTION? | YES | NO | IF YES, PROVIDE DETAILS |

ALL OPERATORS MUST BE DETAILED – IF THERE ARE MORE THAN TWO OPERATORS PLEASE REQUEST ADDITIONAL OPERATOR SHEETS

| No. | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (Including Auto) in the last 5 years |
|---|---|---|---|
| 1 | Robert BRIAN Richards | 11/19/72 | N/A |
| | | Years of Boat Ownership | Years of Boating Experience |
| | | 20 | 25 |
| | | Boating Qualifications (for example USCG 100Ton) | |
| | | 6 PACK | |
| | | Lengths and Manufacturers of Vessels previously owned or operated | |
| | | 32' CALYPSO   40' Luhrs | |
| | | Have you been involved in a Loss in the last 10 years (insured or not)? If YES, please give details and amounts paid: | |
| | | N/A | |
| | | Have you ever been convicted of a criminal offence or pleaded no contest? If YES, please give details | |
| | | NO | |
| 2 | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (Including Auto) in the last 5 years |
| | ADAM M MAJCHRZAK | 12/6/1977 | |
| | | Years of Boat Ownership | Years of Boating Experience |
| | | 5 | 20 |
| | | Boating Qualifications (for example USCG 100Ton) | |
| | | USCG License   6 PACK | |
| | | Lengths and Manufacturers of Vessels previously owned or operated | |
| | | 36' CROWN CLASSIC | |
| | | Have you been involved in a Loss in the last 10 years (insured or not)? If YES, please give details and amounts paid: | |
| | | No | |
| | | Have you ever been convicted of a criminal offence or pleaded no contest? If YES, please give details | |
| | | NO | |

**WARNING:  THIS IS A NAMED OPERATOR ONLY POLICY**

LOSS PAYEE(S)  (PLEASE PROVIDE NAME AND FULL MAILING ADDRESS):

ADDITIONAL ASSURED'S REQUIRED – (PLEASE PROVIDE NAME, FULL MAILING ADDRESS AND  REASON FOR REQUEST)

CSR/APP/1

Offshore_UF000051

| 9 | WILL THIS VESSEL PARTICIPATE IN ANY RACES/REGATTAS/RALLYS/SPEED TRIALS DURING THIS POLICY PERIOD? | YES | NO | IF YES, COMPLETE RACING SUPPLEMENTARY SHEET |
|---|---|---|---|---|
| 10 | WAS ANY INSURANCE DECLINED, CANCELLED OR NON-RENEWED IN THE LAST 5 YEARS? | YES | NO | IF YES, PROVIDE DETAILS |
| 11 | HAVE YOU OR ANY NAMED OPERATOR BEEN INVOLVED IN A LOSS IN THE LAST 10 YEARS (INSURED OR NOT) | YES | NO | IF YES, PROVIDE DETAILS |
| 12 | HAVE YOU OR ANY NAMED OPERATED BEEN CONVICTED OF A CRIMINAL OFFENCE OR PLEADED NO CONTEST TO A CRIMINAL ACTION? | YES | NO | IF YES, PROVIDE DETAILS |

ALL OPERATORS MUST BE DETAILED -- IF THERE ARE MORE THAN TWO OPERATORS PLEASE REQUEST ADDITIONAL OPERATOR SHEETS

| No. | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (Including Auto) in the last 5 years |
|---|---|---|---|
| 1 | *Cody BRIAN WABISZEWSKI* | 7/14/87 | NO |

| | Years of Boat Ownership | Years of Boating Experience |
|---|---|---|
| | 5 | 15 |

Boating Qualifications (for example USCG 100Ton)
*USCG License 6 PACK*

Lengths and Manufacturers of Vessels previously owned or operated
*30' Wellcraft*

Have you been involved in a Loss in the last 10 years (insured or not)? If YES, please give details and amounts paid:
*N*

Have you ever been convicted of a criminal offence or pleaded no contest? If YES, please give details
*NO*

| 2 | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (including Auto) in the last 5 years |
|---|---|---|---|
| | | | |

| | Years of Boat Ownership | Years of Boating Experience |
|---|---|---|
| | | |

Boating Qualifications (for example USCG 100Ton)

Lengths and Manufacturers of Vessels previously owned or operated

Have you been involved in a Loss in the last 10 years (insured or not)? If YES, please give details and amounts paid:

Have you ever been convicted of a criminal offence or pleaded no contest? If YES, please give details

**WARNING:  THIS IS A NAMED OPERATOR ONLY POLICY**

LOSS PAYEE(S)  (PLEASE PROVIDE NAME AND FULL MAILING ADDRESS):

ADDITIONAL ASSURED'S REQUIRED -- (PLEASE PROVIDE NAME, FULL MAILING ADDRESS AND  REASON FOR REQUEST)

**CSR/APP/1**

PLEASE READ BEFORE SIGNING APPLICATION

1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained therein.

2. Any misrepresentation in this application for insurance may render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

3. Fraud Statement - please see page 8 of this application form & initial the paragraph relevant to you to indicate that you have read and understood this.

| ASSURED SIGNATURE: | PRINT NAME AND STATE YOUR CONNECTION TO THIS POLICY IF YOU ARE NOT THE NAMED ASSURED/BENEFICIAL OWNER | SIGNATURE DATE: |
|---|---|---|
| | | 1/22/10 |

PRODUCING BROKER:

BROKER USE ONLY:

PLEASE PROVIDE SURPLUS LINES TAX FILING INFORMATION OR ADVISE IF NOT APPLICABLE (LICENSE NUMBER WILL SUFFICE):

### Applicable in California

For your protection, California law requires the following to appear on this form:
Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.
California Insurance Frauds Prevention Act 1871.2

### Applicable in Florida and Idaho

Any person who knowingly and with the intent to injure, Defraud, or Deceive any Insurance Company Files a Statement of Claim Containing any False, Incomplete or Misleading Information is Guilty of a Felony*
*In Florida – Third Degree Felony

### Applicable in Indiana

A person who knowingly and with intent to defraud an insurer files a statement of claim containing false, incomplete, or misleading information commits a felony.

### Applicable in Nevada

Pursuant to NRS 686A.291, any person who knowingly and wilfully files a statement of claim that contains any false, incomplete, or misleading information concerning a material fact is guilty of a felony.

### Applicable in New Hampshire

CNR/APP1

# EXHIBIT 2



# Policy Schedule

| | |
|---|---|
| **Policy Number:** | CSRYP/173607 |
| **Assured:** | Offshore Adventures LLC |
| **Assured's Address:** | Watergate Villas West bldg 20 unit 30<br>St Thomas<br>VI 00802<br>US Virgin Islands |
| **Assured's Agent:** | NSI Insurance Group, LLC<br>8181 NW 154th Street<br>Suite 230<br>Miami Lakes<br>FL 33016 |
| **Scheduled Vessel:** | Mixed Bag , 1998 41' Ronin with Caterpillar twin 420hp diesel engine,<br>RSNRR1018797 |

| **Period of Cover:** | from January 23, 2019 00.01 LST to January 23, 2020 00.01 LST |
|---|---|

**Cover and Respective Insured Limits:**

| Section | Sum Insured | Deductible |
|---|---|---|
| **A  Hull** | US$ 95,000 | US$ 4,750 |
| (Named Windstorm Deductible) | | US$ 9,500 |
| Tender/Dinghy | not covered | not applicable |
| Non-Emergency Towing | US$ 1,000 | not applicable |
| **B  Third-Party Liability** CSL | US$ 1,000,000 | US$ 2,500 |
| Crew Liability Extension within CSL | US$ 1,000,000 | US$ 2,500 |
| Commercial Passenger Liability Extension within CSL | US$ 1,000,000 | US$ 2,500 |
| Limited Pollution Extension within CSL | US$ 1,000,000 | US$ 2,500 |
| **C  Medical Payments** | US$ 10,000 | US$ 100 |
| **D  Uninsured Boaters** | US$ 100,000 | not applicable |
| **E  Trailer** | not covered | not applicable |
| **F  Personal Property** | US$ 2,500 | US$ 250 |

| | |
|---|---|
| **Total Premium:** | US$ 7,154 cancelling returns only + US$ 35 Certificate Fee |
| | In the event of cancellation by the Assured minimum of 25% of premium deemed earned. |
| **Named Operators:** | Robert Brian Richards; Adam M Majchrzak; Cody Brian Wabiszevski |

**Concept Special Risks Ltd**
+44 (0) 1943 882 700  ·  www.special-risks.com
Unity House  ·  2 Station Court  ·  Station Road  ·  Guiseley  ·  LEEDS  ·  LS20 8EY  ·  United Kingdom

Offshore_UF000001

Policy Schedule CSRYP/173607 · Concept Special Risks

2

**Laid Up Period:**  None

**Navigational Limits:**  Warranted that the Scheduled Vessel is confined to East Coast USA, Florida, the Bahamas and the Caribbean Sea (excluding Cuba, Colombia, Haiti and Venezuela) - not to exceed 150 miles offshore.

**Insuring Agreement Wording:**

Commercial Yacht Insuring Agreement (SYP/8/COM). Amended to include Captain Charter with liability to maximum six passengers within Combined Single Limit. Including liability to two paid crew within Combined Single Limit.

**Additional Warranties, Terms and Conditions:**

None

**Insuring Agreement Endorsements:**

Hurricane Deductible Endorsement (CSR/HDE/19-2)

**Insurance Provider:**  Great Lakes Insurance SE

**Loss Payee:**  Assured

**Signed:**  Thursday January 31, 2019

For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

3

# Commercial Yacht Insuring Agreement

## 1. DEFINITIONS

a. 'You and your' refer to the insured named on the declaration page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the Scheduled Vessel or as an additional assured.

b. 'We, us and our' refer to the insurers named on the declaration page or accompanying schedule of insurers.

c. 'Covered person,' means you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel.

d. 'Scheduled Vessel' means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the Scheduled Vessel, which would normally be sold with the vessel. This does not include spare parts of the Scheduled Vessel, the Scheduled Vessel's life raft, tender or dinghy unless the same has been declared on the declaration page, nor does it include any items being stored on premises other than on-board the Scheduled Vessel.

e. 'Trailer' refers to the Scheduled Vessel's trailer, used exclusively for that purpose.

f. Words of a masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g. 'Navigational limits' means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h. 'Salvage charges' means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Section A of your insuring agreement.

i. 'Deductible' is the first amount of any claim, which must be paid by you. If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount shall be deducted from the amount payable on each admissible claim.

j. 'Bodily injury/property damage' means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the Scheduled Vessel.

k. 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l. 'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

m. 'Personal Property' means property purchased and owned by you, any covered person, any

member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding any item that is deemed to be part of the Scheduled Vessel as <u>defined in (d)</u> above.

n. 'Race or speed trial' means any event involving speed and/or of a competitive nature, including, but not limited to, Regattas and/or Rallies. 'Preparing for a race or speed trial' means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

o. 'Named Windstorm' damage is damage relating to or resulting from a named or any numbered tropical weather pattern from the time the named windstorm or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the named windstorm or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

p. 'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

q. 'Operate, operation, operating' means to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel.

r. 'Sinking' means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged under water.

s. 'Constructive' or 'Compromised' Total Loss means where we determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the Scheduled Vessel, is exceeded by or in our opinion is likely to be exceeded by the reasonable cost of repairs.

t. 'Agreed Value' means the sum insured under Section A of the insuring agreement declaration page or any endorsement to the same.

u. 'Combined Single Limit' (CSL) means the maximum amount we will pay towards any sum or sums that you or any other covered person become legally liable to pay and shall pay as a result of any one accident or occurrence arising from your operation of the Scheduled Vessel. If the insuring agreement declaration page shows multiple liability limits, the maximum amount we will pay in total in respect of any one accident or occurrence or series of accidents or occurrences arising from a single event, is limited to the amount shown as the Combined Single Limit irrespective of the number of claims or claimants arising from the said accident, occurrence or single event and in no circumstances shall there be any aggregation of liability limits shown on the insuring agreement declaration page in excess of the Combined Single Limit hereunder.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

Offshore_UF000004

### 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss incurred and covered by this insuring agreement will be paid by us whether successful or not. These will be paid in addition to the sum insured under Sections A and F. Our maximum liability for these expenses is 50% of the sum insured under Section A of this insuring agreement less the deductible shown under Sections A and F.

If a sum insured is shown for 'Non Emergency Towing' on the insuring agreement declaration page, this represents the maximum amount per incident or event and for the duration of this policy, that we will pay in respect of expenses incurred by you for such charges, where the Scheduled Vessel is in no immediate danger but are incurred in good faith to prevent loss or damage to the Scheduled Vessel.

We will pay salvage charges incurred by you in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A.

If the Scheduled Vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured, less the deductible shown under Section A.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the Insured vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person. In no case shall our maximum liability exceed the sum insured hereunder.

The deductible shown under Section A of the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the Scheduled Vessel, unless arising from a named windstorm when the deductible detailed below shall apply.

Loss or damage to the Scheduled Vessel arising from a named or numbered windstorm shall be subject to a deductible which shall apply to all claims, including actual and/or constructive and/or compromised total loss of the insured vessel, equal to double the deductible as shown on the declaration page under Sections A and/or F of the insuring agreement.

### Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

a. Loss of or damage sustained by the Scheduled Vessel whilst being transported over land (whether by trailer or other method of conveyance approved by us in writing), more than 250 miles from the normal place of storage, as disclosed within your application form.

b. Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

c. Marring, scratching or denting of the hull and/or equipment of the Scheduled Vessel.

d. Osmosis, blistering or electrolysis.

e. Manufacturing defects or design defects, including latent defects.

f. Un-repaired damage claims if the Scheduled Vessel is subsequently deemed by us to be an actual or constructive total loss, during the insuring agreement period.

g. Losses caused directly or indirectly by ice or freezing.

h. Loss or damage caused intentionally by you and/or any member of your family.

i. Theft of the Scheduled Vessel and/or its equipment whilst on a trailer unless the Scheduled Vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and/or removal made by tools, explosives, electricity or chemicals.

j. Your personal expenses or those of your family including but not limited to the cost of your own labour, hotel or accommodation costs, car rental and communication costs.

k. Losses caused by delay in repairs and/or loss of use and/or enjoyment of the Scheduled Vessel and/or its equipment.

l. Loss and/or damage to sails, sail covers, external canvases, including but not limited to Bimini Tops, arising from a named windstorm unless properly removed and stowed.

m. Any loss of value of the Scheduled Vessel and/or its equipment as a result of repairs and/or replacements being effected as a result of any claim hereunder.

n. Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

o. Loss or damage to the Scheduled Vessel and/or its equipment where you have abandoned the Scheduled Vessel without damage which would have resulted in a payable claim hereunder.

p. Loss of or damage to the Scheduled Vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the Scheduled Vessel by any repair yard.

q. The loss of or replacement of fuel or perishable goods that are on board the Scheduled Vessel at the time of loss.

r. Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

**4. Coverage B. Third Party Liability**

If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of Scheduled Vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice where we deem necessary. Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

**Exclusions to Coverage B**

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

    a.  Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

    b.  Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

    c.  Liability assumed by you under any contract or agreement.

    d.  Liability which arises while the Scheduled Vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

    e.  Fines or penalties imposed by any Government agency.

    f.  Punitive or exemplary damages however described.

    g.  Liability due to pollution by any substance whether it be gradual, or sudden and accidental except as provided for in the Pollution Coverage Extension of this Insuring Agreement.

    h.  Intentional acts.

    i.  Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

    j.  Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

    k.  Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the Scheduled Vessel, until they are safely back on board, other than that provided under limited extension of liability for waterskiing detailed in Coverage B Water Skiing Coverage Limitation of Liability.

    l.  Liability to or for divers operating from the Scheduled Vessel, from the time they commence to leave the Scheduled Vessel, until they are safely back on board.

    m.  Liability to fare paying passengers or passengers carried under charter.

    n.  Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

    o.  Loss or damage to any other vessel caused by the operation of the Scheduled Vessel in so far as the same would have been covered under Section A of this insuring agreement.

p. Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the sun's rays either cumulatively or suddenly.

q. Any claim arising from directly or indirectly caused by or associated with Human Immunodeficiency Virus (HIV) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

**Coverage B, Water Skiing Coverage Limitation of Liability**

Whilst the Insured vessel is being used for water skiing, the third party liability limits relating to this activity are reduced to:

| | |
|---|---|
| **Property damage** | US$ 10,000 |
| **Bodily Injury** | US$ 10,000 |
| **Maximum any one incident** | US$ 20,000 |

These limits shall apply from the time any person or persons begin to leave the Scheduled Vessel, or such activity commences, and will continue until the person or persons are safely back on board and such activity ceases completely. All other terms, warranties, conditions, exclusions, remain unaltered and in effect save for exclusion (k) above.

Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

**Coverage B, Extension to include Crew Liability**

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the Scheduled Vessel.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability and within the Combined Single Limit. All other terms, warranties, conditions, and exclusions remain unaltered and in effect save for exclusion (i) and exclusion (j) above.

The deductible shown on the insuring agreement declaration page shall apply to each crew liability claim.

**Coverage B, Extension to include Commercial Passenger Liability**

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover all sums which you become legally liable to pay and shall pay to fare paying passengers or passengers carried under charter as a result of your ownership or operation of the Scheduled Vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you using attorneys of our choice where we deem necessary. The maximum amount recoverable in respect of Passenger

Liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability and within the Combined Single Limit.

The deductible shown on the insuring agreement declaration page shall apply to each passenger liability claim.

All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion (m) above.

**Coverage B, Extension to include Limited Pollution Coverage**

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (g) Coverage B Third Party Liability, we agree to indemnify you for reasonable costs incurred by you preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the scheduled vessel, where coverage is afforded under this insuring agreement, provided always that such pollution hazard or threat thereof:

    a. Was sudden, unintentional and unexpected by you.

    b. That the incident commenced during the period of this insuring agreement.

    c. It became known to you within 72 hours of its commencement.

    d. Was reported to us in writing not later than seven days after having become known to you.

    e. Was not a result of your want of due diligence of that or your managers, servants or agents to prevent or mitigate such pollution hazard to threat thereof.

These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder. Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

**5. Coverage C, Medical Payments**

If a sum insured is shown under Section C of the insuring agreement declaration page, we will pay reasonable medical and/or funeral expenses necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or on-board the Scheduled Vessel insured under this insuring agreement. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under Section B of this insuring agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved. Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

**Exclusions to Coverage C**

We do not provide medical payment coverage for:

a. Covered persons, their spouses, family or other persons who reside with them. Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b. Responsibility assumed under any contract or agreement.

c. Anyone injured whilst the Scheduled Vessel is being transported, hauled out or launched.

d. Trespassers on the Scheduled Vessel.

e. Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

**6. Coverage D, Uninsured Boaters**

If a sum insured is shown under Section D of the insuring agreement declaration page, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

We will also pay any medical expenses incurred by your lawful guests and invitees (including members of your family) as a result of any such incident giving rise to claim under this section

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

**Exclusions to Coverage D**

We do not provide coverage for:

a. Claims settled without our prior written consent.

b. Loss due to an uninsured vessel which is a Government vessel.

c. Loss due to a vessel owned and/or operated by a covered person.

d. Loss where no physical damage to the Scheduled Vessel exists, evidencing collision.

e. Any loss or damage otherwise recoverable under this insuring agreement.

f. Bodily injury, illness or death of any covered person.

g. Any loss otherwise excluded by any provision of this Insuring Agreement.

Offshore_UF000010

## 7. Coverage E, Trailer

If a sum insured is shown under Section E of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer provided it is used exclusively for the transportation of the Scheduled Vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value. Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss covered by this insuring agreement will be paid by us, whether successful or not. These will be paid in addition to the sum insured under Section E without application of the insuring agreement deductible. Our maximum liability for such expenses is 50% of the sum insured under Section E.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual or constructive total loss of trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement.

A deductible of 10% of the agreed value of the Scheduled Vessel trailer shall apply to each theft loss, including total loss of the trailer. However a deductible of 5% of the agreed value of the trailer shall apply to each theft loss, including total loss, provided the scheduled trailer is stored in a commercial storage yard or marina that provides 24 hour security.

### Exclusions to Coverage E

a. Damages sustained by the trailer whilst the Scheduled Vessel is being transported over land, more than 250 miles from the normal place of storage, unless specifically agreed by us in writing and an additional premium paid.

b. Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould, animal or marine life.

c. Marring, scratching or denting.

d. Manufacturing defects or design defects, including latent defects.

e. Tyre damage.

f. Losses due to exceeding manufacturer's maximum load or speed specifications.

g. Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

h. Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

## 8. Coverage F, Personal Property

If a sum insured is shown under Section F of the insuring agreement declaration page, we will cover direct physical loss or damage to personal property from any accidental cause, whilst property is

onboard, being loaded onto, or unloaded from the Scheduled Vessel. Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$ 1,000.

Fishing gear and tackle, unless permanently affixed to the Scheduled Vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the Scheduled Vessel, we will only pay claims in the ratio that such sum insured bears to the overall cash value of the covered property situate on the Scheduled Vessel at the time of the covered loss.

### Exclusions to Coverage F

We will not cover loss or damage to or in respect of:

a. Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b. Fishing gear or tackle which is permanently affixed to the Scheduled Vessel, unless the Scheduled Vessel insured hereunder shall become an actual or constructive total loss, due to a covered loss.

c. Food and/or perishable items, including any type of fuel.

We will not cover losses due to:

a. Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b. Breakage of articles of a brittle nature unless caused by the Scheduled Vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c. Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the Scheduled Vessel.

d. Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

### 9. General Conditions & Warranties

a. It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

b. This insuring agreement incorporates in full your application for insurance and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

c. This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the Scheduled Vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the Scheduled Vessel arrives safely at its next port of call and for a

further 24 hours, provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

d.  This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated as pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up, or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the Scheduled Vessel, and then pro rata or short rate applied. Cancellations due to sale of the Scheduled Vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

e.  If you sell or pledge the Scheduled Vessel or otherwise transfer ownership in part or in full, or give up possession of the Scheduled Vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

f.  In the event of an actual and/or constructive and/or compromised total loss under this insuring agreement the annual premium is deemed fully earned by us.

g.  If you have used a broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

h.  We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

i.  It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall not be deemed to provide cover or shall we be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

j.  If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

k.  If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

l.  This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

m.  We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance (other than to the extent provided for under

extension of Section B limited pollution coverage) iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these iv) capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

n.  If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us or acceptance of any claim as may be covered hereunder.

o.  If any covered person has other insurance against risks covered by this insuring agreement, then this insurance shall be in excess over all other valid and collectible insurances.

p.  Unless we specifically agree in writing and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

q.  Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either:

   i.  The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyor's) satisfaction prior to any loss and/or claim

   Or,

   ii. The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

r.  No suit or action on this insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such State.

s.  Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

t.  Where a lay-up 'laid up period' has been specified within the declaration page, it is warranted that the Scheduled Vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified. 'Use' includes, but is not restricted to, living on board the Scheduled Vessel.

u.  The Scheduled Vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible. Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows:

i. Internal and/or external paints, finishes, gelcoat or other covering — 10% per annum.

ii. Bottom paint including but not limited to anti-foul or barrier coat finishes — 50% per annum.

iii. Sails, standing and running rigging — 12.5% per annum.

iv. Internal and/or external protective covers, canvas, vinyl and other materials and their frames — 20% per annum.

v. Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs — 10% per annum.

vi. Machinery including but not limited to engines, generators, water makers and waste systems — 7% per annum.

vii. Outboard Motors — 20% per annum.

viii. Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers — 20% per annum.

ix. Batteries and solar charging panels — 20% per annum.

x. Electrical equipment including but not limited to internal and external appliances, navigational aids, depth sounders, winches, pump motors and electric deck gear — 10% per annum.

xi. Mast and spars — 5% per annum.

xii. Stanchions and lifelines — 10% per annum.

xiii. Inflatable tenders, dinghies or life rafts — 12.5% per annum.

xiv. Hard FRP, composites, aluminium or wood tenders, dinghies or life rafts — 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciation value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible.

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

v. We have the right to either pay you the reasonable costs of repairs of your vessel or we will declare your vessel a constructive total loss. Where we have paid the agreed value of your vessel to you as a result of our declaring the Scheduled Vessel a constructive total loss, you will, at our request, transfer title to the Scheduled Vessel either to us or to our designated or named nominee. We will provide you with the option to retain title to the Scheduled Vessel should you match or better the highest bid to purchase the vessel that we receive. We may offset any claim payment due to you against such sum due should you retain title to the Scheduled Vessel in accordance with the

above.

w. It is warranted that the Scheduled Vessel will be operated only by covered persons. However, in the event of an incident occurring when the vessel is being operated by any person other than a covered person that may give rise to a claim under this insurance, you have a period of seven days following such an incident to submit details of the operator for retroactive approval by underwriters. Such approval not to be unreasonably withheld.

x. Where you are entitled to limit your liability to third parties the maximum recoverable under Section 4 Coverage B, Third Party Liability herein, is the amount you become legally liable to pay or the limit of coverage shown under Section B of the insuring agreement declaration page, whichever is the lesser amount.

y. Where two or more insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The insurers in such circumstances are not responsible for the subscription of any co subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

## 10. Your Duties In The Event Of A Loss

1. Immediately take all possible steps to minimise the loss and protect the Scheduled Vessel from further loss. Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2. Within 30 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances, this term is a condition precedent to our liability hereunder.

3. Comply with any reasonable request made of you, by us with regard to the loss.

4. Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5. Give us an opportunity to examine the damaged property before it is repaired or discarded.

6. Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7. Neither assume obligation, nor admit liability without our written permission to do so.

8. Immediately forward to us any legal papers or notices received in connection with the loss.

9. Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request.

10. Allow examination by physicians of our choice.

11. Assist us in obtaining copies of medical records and reports.

12. Give us a notarised statement or statutory declaration if we so request.

13. Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14. Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses. You must also

co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

**11. Service Of Suit, Choice Of Law And Forum**

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

It is further agreed that:

a.  the Assured may serve process upon any senior partner in the firm of:

> Mendes & Mount, LLP
> 750 7th Avenue
> New York, NY 10019

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b.  The above named are authorised and directed to accept service of process on behalf of Underwriters in all such suits and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriter's behalf in the event such a suit shall be instituted.

c.  Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

This wording is the property of Concept Special Risks Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of Concept Special Risks Ltd. Concept Special Risks Ltd will seek legal redress from any person or persons found to have infringed their copyright

*SYP/8/COM*

# Hurricane Deductible Endorsement

Any reference made to a double deductible in respect to named or numbered windstorm, within Section A of the Insuring Agreement, specifically relating to Hull and Machinery is removed and an amount of five percent or double the deductible shown within Coverage and Respective Limits of the Policy Schedule, whichever is the greatest amount, shall apply. This deductible applies to all claims including actual and/or constructive and/or compromised total loss of the Scheduled Vessel. Deductibles in respect of all other property coverages remain unaffected.

**ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNALTERED.**

Offshore_UF000018



# Policy Endorsement

| | |
|---|---|
| **Policy Number:** | CSRYP/173607 |
| | This endorsement attaches to and forms part of the policy. |
| **Endorsement:** | 1 |
| **Assured:** | Offshore Adventures LLC |
| **Assured's Address:** | Watergate Villas West bldg 20 unit 30<br>St Thomas<br>VI 00802<br>US Virgin Islands |
| **Assured's Agent:** | NSI Insurance Group, LLC<br>8181 NW 154th Street<br>Suite 230<br>Miami Lakes<br>FL 33016 |

It is hereby noted and agreed that with effect from Wednesday January 23, 2019

The Personal Property Limit is increased to $8,000 deductible $800.

In consideration of which, an Additional Premium of US$ 165 is due.

All other terms and conditions remain unaltered.

| | |
|---|---|
| **Insurance Provider:** | Great Lakes Insurance SE |
| **Signed:** | Thursday January 31, 2019 |

For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.



# Policy Endorsement

| | |
|---|---|
| **Policy Number:** | CSRYP/173607 |
| | This endorsement attaches to and forms part of the policy. |
| **Endorsement:** | 2 |
| **Assured:** | Offshore Adventures LLC |
| **Assured's Address:** | Watergate Villas West bldg 20 unit 30 |
| | St Thomas |
| | VI 00802 |
| | US Virgin Islands |
| **Assured's Agent:** | NSI Insurance Group, LLC |
| | 8181 NW 154th Street |
| | Suite 230 |
| | Miami Lakes |
| | FL 33016 |

It is hereby noted and agreed that with effect from Wednesday January 23, 2019

The Personal Property Limit is increased to $10,500 deductible $1,050.

US Small Business Administration, 801 Tom Martin Drive, Suite 120, Birmingham, AL 35211 is noted as loss payee in respect to the personal property covered hereunder.

In consideration of which, an Additional Premium of US$ 75 is due.

All other terms and conditions remain unaltered.

| | |
|---|---|
| **Insurance Provider:** | Great Lakes Insurance SE |
| **Signed:** | Tuesday February 5, 2019 |

For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.



# Policy Endorsement

| | |
|---|---|
| **Policy Number:** | CSRYP/173607 |
| | This endorsement attaches to and forms part of the policy. |
| **Endorsement:** | 3 |
| **Assured:** | Offshore Adventures LLC |
| **Assured's Address:** | Watergate Villas West bldg 20 unit 30<br>St Thomas<br>VI 00802<br>US Virgin Islands |
| **Assured's Agent:** | NSI Insurance Group, LLC<br>8181 NW 154th Street<br>Suite 230<br>Miami Lakes<br>FL 33016 |

It is hereby noted and agreed that with effect from Wednesday March 27, 2019

Richard Charles Paolillo is hereby noted as an approved operator and replaces Adam M Majchrzak as paid crew.

Adam M Majchrzak is hereby removed as an approved operator.

All other terms and conditions remain unaltered.

**Signed:**          Wednesday March 27, 2019

For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

# EXHIBIT 3

**Concept Special Risks Ltd**   www.special-risks.co.uk

**Application Form**

Quote # 398167A

| ASSURED'S NAME: | ASSURED'S NATIONALITY: | ASSURED'S STATE OF RESIDENCE: |
|---|---|---|
| Offshore Adventures LLC | US | USVI |

**FULL MAILING ADDRESS (including ZIP/Post Code where available). IF COMPANY PROVIDE REGISTERED ADDRESS**

7260 Seacliff Villas #19 St. Thomas USVI

**BENEFICIAL OWNER (this should be completed if vessel is insured in a company name or if the beneficial owner of the vessel is someone other than the Named Assured):** Robert Richards

| EFFECTIVE DATE FROM: (mm/dd/yy) 1/23/19 | TO: (mm/dd/yy) 1/23/20 | | 0.01hrs LST |
|---|---|---|---|
| VESSEL NAME: Mixed Bag II | HULL ID: CMS1000IJ000 | | LENGTH OVERALL: 32 |
| MANUFACTURER/MODEL: Calypso | YEAR BUILT: 2000 | MODEL YEAR: 2000 | |
| PURCHASE PRICE: 45,000 | DATE OF PURCHASE: 2008 | PRESENT VALUE: 45,000 | |
| MAXIMUM SPEED: 20 | VESSEL REGISTERED: USVI | VESSEL FLAG: US | |

**COVERAGES WILL NOT BE PROVIDED UNLESS REQUESTED HEREUNDER**

| COVERAGES | LIMIT (US Dollar) |
|---|---|
| HULL PHYSICAL DAMAGE | 45,000 |
| TENDER/DINGHY | |
| MEDICAL PAYMENTS (maximum ($50,000) | 10,000 |
| PERSONAL PROPERTY | 2,500 |
| TRAILER | |
| BREACH OF WARRANTY (APPLICABLE LOSS PAYEE MUST BE DETAILED ON PAGE 4) | |
| THIRD PARTY LIABILITY | 4,000,000 |
| LIABILITY TO PAID CREW | 1,000,000 |
| COMMERCIAL PASSENGER LIABILITY | 1,000,000 |
| UNINSURED BOATERS (minimum $100,000) | 100,000 |
| NON-EMERGENCY TOWING | 1,000 |
| OTHER (please specify) | |

**PLEASE TICK THE APPROPRIATE BOXES**

| PRIMARY POWER | SAIL | | TYPE OF VESSEL | C C | SAILBOAT | |
|---|---|---|---|---|---|---|
| | OUTBOARD | | | | MOTOR YACHT | |
| | INBOARD | X | | | SPORTSFISHER | X |
| HULL MATERIAL: | FIBREGLASS | X | | | HOUSEBOAT | |
| | WOOD | | | | CATAMARAN | |
| | KEVLAR | | LAST SURVEYED (mm/dd/yy) | | OTHER (give details) | |
| | CARBONFIBRE | | | | ASHORE OR AFLOAT | |
| | FERROCEMENT | | | | | |
| | METAL | | | | | |

**VESSEL ENGINE/OUTBOARD DETAILS**

| | HP | MANUFACTURER | FUEL | YEAR | SERIAL NO# |
|---|---|---|---|---|---|
| #1 | 375 | Yanmar | Diesel | 2018 | GLY |
| #2 | | | | | |

| | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|
| #1 | 2018 | 10,000 | 20,000 |
| #2 | | | |

**TENDER/DINGHY INFORMATION**

| MANUFACTURER | YEAR | HULL ID/SERIAL NUMBER | LENGTH |
|---|---|---|---|
| | | | |

**TENDER/DINGHY ENGINE/OUTBOARD DETAILS**

| MANUFACTURER | HP | SERIAL NUMBER |
|---|---|---|
| | | |

CSR/APP/1

Offshore_UF000054

| TRAILER INFORMATION | | | | | |
|---|---|---|---|---|---|
| **MANUFACTURER** | **YEAR BUILT** | **DATE PURCHASED** | **PURCHASE PRICE** | **PRESENT VALUE** | **SERIAL NUMBER** |
| | | | | | |
| | | | | | |

**PRIMARY MOORING LOCATION OF VESSEL (INCLUDING ZIP/POST CODE WHERE AVAILABLE) BETWEEN JULY 1ST – NOV 1ST**
**PLEASE SPECIFY WHETHER VESSEL WILL BE ASHORE/AFLOAT (MOORED)/OR ON A HOIST. IF YOU ARE UNABLE TO PROVIDE A ZIP/POST CODE, PLEASE ADVISE LONGITUDE & LATITUDE.**

Westin St. John Resort
300B Chocolate hole
St John, Great Cruz Bay 00830        Dock/slip

**PLEASE ADVISE IF THIS VESSEL IS FITTED WITH MANUFACTURER RECOMMENDED FIRE PREVENTION/EXTINGUISHING EQUIPMENT (if no provide explanation) :**

(YES)        NO        4 Extinguishers
on Board

**PLEASE DETAIL ANY ANTI-THEFT PRECAUTIONS WHICH ARE IN PLACE**



**ALL WATERS TO BE NAVIGATED DURING THIS POLICY PERIOD (YOU MAY ATTACH AN ITINERARY)**

Atlantic & Caribbean Sea

**WILL THE VESSEL BE LAID UP (OUT OF USE) DURING THIS POLICY PERIOD – IF SO DETAIL EXACT DATES, LOCATION AND ADVISE WHETHER ASHORE OR AFLOAT.**

N/A

| # | GENERAL INFORMATION | | | | |
|---|---|---|---|---|---|
| 1 | IS THIS VESSEL USED FOR FARE PAYING PASSENGERS? | (YES) | NO | IF YES, NUMBER OF PASSENGERS PER TRIP | |
| | | | | MAXIMUM: 6 | AVERAGE: 4 |
| | | | | NUMBER OF TRIPS PER YEAR | |
| | | | | MAXIMUM: 200 | AVERAGE: 200 |
| 2 | IS THIS VESSEL CHARTERED TO OTHERS WITH A CAPTAIN? | (YES) | NO | IF YES, COMPLETE CAPTAIN CHARTER SUPPLEMENTARY SHEET | |
| 3 | DOES THIS APPLICANT EMPLOY PAID CREW | (YES) | NO | IF YES, HOW MANY? 2 | |
| 4 | IS THIS VESSEL CHARTERED TO OTHERS WITHOUT A CAPTAIN (BAREBOAT)? | YES | (NO) | IF YES, COMPLETE BAREBOAT CHARTER SUPPLEMENTARY SHEET | |
| 5 | IS THIS VESSEL USED FOR WATERSKIING OR DIVEBOAT CHARTER? | YES | (NO) | IF YES, PROVIDE DETAILS | |
| 6 | IS THIS VESSEL USED FOR ANY OTHER COMMERCIAL OR BUSINESS PURPOSES? | YES | (NO) | IF YES, PROVIDE DETAILS | |
| # | GENERAL INFORMATION CONTINUED | | | | |
| 7 | WILL THIS VESSEL BE OPEATED SINGLE HANDEDLY AT NIGHT? | YES | (NO) | IF YES, ADVISE WHEN, WHERE AND HOW OFTEN? | |
| 8 | DOES ANYONE RESIDE ABOARD THE VESSEL | YES | (NO) | IF YES, FOR HOW LONG DURING THE POLICY PERIOD? | |

**CSR/APP/1**

| 9 | WILL THIS VESSEL PARTICIPATE IN ANY RACES/REGATTAS/RALLYS/SPEED TRIALS DURING THIS POLICY PERIOD? | YES | NO | IF YES, COMPLETE RACING SUPPLEMENTARY SHEET |
|---|---|---|---|---|
| 10 | WAS ANY INSURANCE DECLINED, CANCELLED OR NON-RENEWED IN THE LAST 5 YEARS? | YES | NO | IF YES, PROVIDE DETAILS |
| 11 | HAVE YOU OR ANY NAMED OPERATOR BEEN INVOLVED IN A LOSS IN THE LAST 10 YEARS (INSURED OR NOT) | YES | NO | IF YES, PROVIDE DETAILS |
| 12 | HAVE YOU OR ANY NAMED OPERATED BEEN CONVICTED OF A CRIMINAL OFFENCE OR PLEADED NO CONTEST TO A CRIMINAL ACTION? | YES | NO | IF YES, PROVIDE DETAILS |

ALL OPERATORS MUST BE DETAILED -- IF THERE ARE MORE THAN TWO OPERATORS PLEASE REQUEST ADDITIONAL OPERATOR SHEETS

| No. | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (Including Auto) in the last 5 years |
|---|---|---|---|
| 1 | Robert BRiAN Richards | 11/19/72 | N/A |
| | | **Years of Boat Ownership** 20 | **Years of Boating Experience** 25 |
| | | **Boating Qualifications (for example USCG 100Ton)** 6 PACK | |
| | | **Lengths and Manufacturers of Vessels previously owned or operated** 32' Calypso, 40' Luhrs | |
| | | **Have you been involved in a Loss in the last 10 years (insured or not)? If YES, please give details and amounts paid:** N/A | |
| | | **Have you ever been convicted of a criminal offence or pleaded no contest? If YES, please give details** NO | |

| No. | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (including Auto) in the last 5 years |
|---|---|---|---|
| 2 | Adam M. MATChRZAK | 12/6/1977 | NO |
| | | **Years of Boat Ownership** 5 | **Years of Boating Experience** 20 |
| | | **Boating Qualifications (for example USCG 100Ton)** USCG License | |
| | | **Lengths and Manufacturers of Vessels previously owned or operated** 36' CROWN Classic | |
| | | **Have you been involved in a Loss in the last 10 years (insured or not)? If YES, please give details and amounts paid:** NO | |
| | | **Have you ever been convicted of a criminal offence or pleaded no contest? If YES, please give details** NO | |

**WARNING:  THIS IS A NAMED OPERATOR ONLY POLICY**

LOSS PAYEE(S)  (PLEASE PROVIDE NAME AND FULL MAILING ADDRESS):

ADDITIONAL ASSURED'S REQUIRED – (PLEASE PROVIDE NAME, FULL MAILING ADDRESS AND  REASON FOR REQUEST)

**CSR/APP/1**

| 9 | WILL THIS VESSEL PARTICIPATE IN ANY RACES/REGATTAS/RALLYS/SPEED TRIALS DURING THIS POLICY PERIOD? | YES | NO | IF YES, COMPLETE RACING SUPPLEMENTARY SHEET |
|---|---|---|---|---|
| 10 | WAS ANY INSURANCE DECLINED, CANCELLED OR NON-RENEWED IN THE LAST 5 YEARS? | YES | NO | IF YES, PROVIDE DETAILS |
| 11 | HAVE YOU OR ANY NAMED OPERATOR BEEN INVOLVED IN A LOSS IN THE LAST 10 YEARS (INSURED OR NOT) | YES | NO | IF YES, PROVIDE DETAILS |
| 12 | HAVE YOU OR ANY NAMED OPERATED BEEN CONVICTED OF A CRIMINAL OFFENCE OR PLEADED NO CONTEST TO A CRIMINAL ACTION? | YES | NO | IF YES, PROVIDE DETAILS |

ALL OPERATORS MUST BE DETAILED – IF THERE ARE MORE THAN TWO OPERATORS PLEASE REQUEST ADDITIONAL OPERATOR SHEETS

| No. | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (Including Auto) in the last 5 years |
|---|---|---|---|
| 1 | Cody BRIAN WABISZEVSKI | 7/14/87 | NO |
| | | **Years of Boat Ownership** 5 | **Years of Boating Experience** 15 |
| | | **Boating Qualifications (for example USCG 100Ton)** USCG 6 PACK License. | |
| | | **Lengths and Manufacturers of Vessels previously owned or operated** 30' Well CRAFT | |
| | | **Have you been involved in a Loss in the last 10 years (insured or not)?  If YES, please give details and amounts paid:** NO | |
| | | **Have you ever been convicted of a criminal offence or pleaded no contest?  If YES, please give details** NO | |
| 2 | Full Name | Date of Birth (mm/dd/yy) | Violations/Suspensions (Including Auto) in the last 5 years |
| | | **Years of Boat Ownership** | **Years of Boating Experience** |
| | | **Boating Qualifications (for example USCG 100Ton)** | |
| | | **Lengths and Manufacturers of Vessels previously owned or operated** | |
| | | **Have you been involved in a Loss in the last 10 years (insured or not)?  If YES, please give details and amounts paid:** | |
| | | **Have you ever been convicted of a criminal offence or pleaded no contest?  If YES, please give details** | |

**WARNING:  THIS IS A NAMED OPERATOR ONLY POLICY**

LOSS PAYEE(S)  (PLEASE PROVIDE NAME AND FULL MAILING ADDRESS):




ADDITIONAL ASSURED'S REQUIRED – (PLEASE PROVIDE NAME, FULL MAILING ADDRESS AND  REASON FOR REQUEST)


**CSR/APP/1**

Page 4 of 5          **Concept Special Risks Ltd**          www.specialrisks.co.uk



**PLEASE READ BEFORE SIGNING APPLICATION**

1.  This application will be incorporated in its entirety into any relevant policy of insurance where Insurers have relied upon the information contained therein.

2.  Any misrepresentation in this application for insurance may render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

3.  Fraud Statement – please see page 5 of this application form & initial the paragraph relevant to you to indicate that you have read and understood this.

| ASSURED SIGNATURE: | PRINT NAME AND STATE YOUR CONNECTION TO THIS POLICY IF YOU ARE NOT THE NAMED ASSURED/BENEFICIAL OWNER | SIGNATURE DATE: |
|---|---|---|
| | | 1/22/10 |

**PRODUCING BROKER**

**BROKER USE ONLY:**

PLEASE PROVIDE SURPLUS LINES TAX FILING INFORMATION OR ADVISE IF NOT APPLICABLE (LICENSE NUMBER WILL SUFFICE):

### Applicable in California

For your protection, California law requires the following to appear on this form:
Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.
California Insurance Frauds Prevention Act 1871.2

### Applicable in Florida and Idaho

Any person who Knowingly and with the Intent to Injure, Defraud, or Deceive any Insurance Company Files a Statement of Claim Containing any False, Incomplete or Misleading Information is Guilty of a Felony*
*In Florida – Third Degree Felony

### Applicable in Indiana

A person who knowingly and with intent to defraud an Insurer files a statement of claim containing false, incomplete, or misleading information commits a felony.

### Applicable in Nevada

Pursuant to NRS 686A.291, any person who knowingly and wilfully files a statement of claim that contains any false, incomplete, or misleading information concerning a material fact is guilty of a felony.

Offshore_UF000058

# EXHIBIT 4



# Renewal Questionnaire

| | |
|---|---|
| **Quote Number:** | 415286A |
| **Previous Policy:** | CSRYP/173608 |
| **Next Policy Period:** | January 23, 2020 to January 23, 2021 |
| **Assured:** | Offshore Adventures LLC |
| **Assured's Address:** | Watergate Villas West bldg 20 unit 30, St Thomas, VI 00802, US Virgin Islands |
| **Scheduled Vessel:** | Mixed Bag II, 2000 32' Calypso with Yanmar 375hp diesel engine, CMS1000IJ000 |

Renewal Questionnaire • Concept Special Risks                                                    2

**Cover and Respective Insured Limits:**

| Section | Expiring Coverage | Currently Quoted Coverage | Revised Coverage |
|---|---|---|---|
| **A Hull** | US$ 45,000 | US$ 45,000 | |
| Hull Deductible | US$ 1,800 | US$ 1,800 | |
| Tender/Dinghy | not covered | not covered | |
| Non-Emergency Towing | US$ 1,000 | US$ 1,000 | |
| Breach of Warranty | not covered | not covered | |
| **B Third-Party Liability** CSL | US$ 1,000,000 | US$ 1,000,000 | |
| Crew Liability Extension within CSL | US$ 1,000,000 | US$ 1,000,000 | |
| Commercial Passenger Liability Extension within CSL | US$ 1,000,000 | US$ 1,000,000 | |
| Limited Pollution Extension within CSL | US$ 1,000,000 | US$ 1,000,000 | |
| **C Medical Payments** | US$ 10,000 | US$ 10,000 | |
| **D Uninsured Boaters** | US$ 100,000 | US$ 100,000 | |
| **E Trailer** | not covered | not covered | |
| **F Personal Property** | US$ 2,500 | US$ 10,000 | |
| Other (Please specify) | | | |

**Residence:** Will your vessel be your full-time residence during the next policy period?

Yes (No)

**Surveys:** Your next survey is due on **January 23, 2021** and should be performed **out of the water** (hauled).

**Navigational Limits:** Warranted that the Scheduled Vessel is confined to **East Coast USA, Florida, the Bahamas and the Caribbean Sea (excluding Cuba, Colombia, Haiti and Venezuela) - not to exceed 50 miles offshore.**

If you require different navigational limits to these, please detail here or attach an itinerary.

**Hurricane Mooring:**   Your vessel mooring location during July 1st to November 1st is currently declared as **Westin Resort St John, Great Cruz Bay, St John, USVI 00831, US Virgin Islands, 18.3333 -64.794197**. If this is incorrect please detail below, providing the full address, ZIP/postal code and longitude/ latitude readings of the new mooring location:

Will your vessel will be afloat or ashore during the hurricane season?

**Afloat / Ashore**

**Loss Payees:**   Your previous policy had the following loss payees: Assured. If you need any additional loss payees, please name them here:

**Operators:**   The four individuals detailed on the following pages are approved by us to operate the Scheduled Vessel.

Please ensure all persons (including captains and crew) operating the vessel during the policy period are listed in the following pages, and that all details are complete, accurate and up to date. Delete any operator no longer required.

**Warning: This is a named-operator-only policy.**

**Operator 1:**

Please ensure the details provided for **Robert Brian Richards** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Robert Brian Richards no longer operates the Scheduled Vessel, please cross out the table below.

| Name | Robert Brian Richards |
| --- | --- |
| **Date of birth** | November 19, 1972 |
| **State of residence** | TBD |
| **Years of boat ownership** | 20 |
| **Years of boating experience** | 25 |

**Violations and suspensions (including auto) in the last five years**
None

**Boating qualifications for which a valid licence is held**
OUPV License

**Details of previous vessels owned and/or operated**
32' Calypso
40' Luhrs

**All losses in the past 10 years (whether insured or not), including payment amounts and current status**
*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*
None 2017 Huricane LOSS
$289,000 PaID

**Details of all criminal convictions and pleas of no contest**
None

Offshore_UF000139

**Operator 2:**   Please ensure the details provided for **Richard Charles Paolillo** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Richard Charles Paolillo no longer operates the Scheduled Vessel, please cross out the table below.

| | |
|---|---|
| **Name** | Richard Charles Paolillo |
| **Date of birth** | October 7, 1964 |
| **State of residence** | Florida, USA |
| **Years of boat ownership** | 20 |
| **Years of boating experience** | 30 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>USCG 50 ton License | |
| **Details of previous vessels owned and/or operated**<br>45' Hatteras<br>50' Sloop | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

Offshore_UF000140

**Operator 3:**    Please ensure the details provided for **Cody Brian Wabiszevski** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Cody Brian Wabiszevski no longer operates the Scheduled Vessel, please cross out the table below.

| | |
|---|---|
| **Name** | Cody Brian Wabiszevski |
| **Date of birth** | July 14, 1987 |
| **State of residence** | TBD |
| **Years of boat ownership** | 5 |
| **Years of boating experience** | 15 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>USCG OUPV License | |
| **Details of previous vessels owned and/or operated**<br>30' Well craft<br>38' Luhrs | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

**Operator 4:**   Please ensure the details provided for **Christopher Moore** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Christopher Moore no longer operates the Scheduled Vessel, please cross out the table below.

| | |
|---|---|
| **Name** | Christopher Moore |
| **Date of birth** | December 26, 1962 |
| **State of residence** | TBD |
| **Years of boat ownership** | 20 |
| **Years of boating experience** | 30 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>USCG - OUPV | |
| **Details of previous vessels owned and/or operated**<br>38' Bertram<br>32' Catamaran | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

**Operator 5:**   Below you may add an additional operator for approval by our under-writers. If you wish to add several operators, please print and submit as many copies of this page as required.

| |
|---|
| **Name** |
| **Date of birth** |
| **State of residence** |
| **Years of boat ownership** |
| **Years of boating experience** |
| **Violations and suspensions (including auto) in the last five years** |
| **Boating qualifications for which a valid licence is held**<br>*Example: USCG 100 Ton Licence* |
| **Details of previous vessels owned and/or operated**<br>*Example: 2005 40 ft Whitby Ketch, owned for 6 years* |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed* |
| **Details of all criminal convictions and pleas of no contest** |

**Other Changes:**     When quoting your renewal, we have assumed that there have been no changes to your policy during the current policy period. If there are any other changes since your original application form was submitted to us, please give details below. If you are unsure whether any change might have an influence upon the quotation that we have provided you with, please contact your broker for advice.

**Misrepresentations:**     Any misrepresentation in this renewal questionnaire will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to this questionnaire.

**Assured's Signature:**

**Print Name:**     Robert Richards

**Date of Completion:**     1/20/20

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.